**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANAIT ISAKHANYAN, | CASE NO. CV 17-7579 SS |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

**I.**

**INTRODUCTION**

Anait Isakhanyan ("Plaintiff") brings this action, seeking to overturn the decision of the Acting Commissioner of Social Security (the "Commissioner" or "Agency") denying her application for Supplemental Security Income ("SSI"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 11, 22-23). For the reasons stated below, the Court AFFIRMS the Commissioner's decision.

## II.

### PROCEDURAL HISTORY

On December 17, 2013, Plaintiff filed an application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act (the "Act") alleging a disability onset date of December 30, 2011. (AR 64, 175). The Commissioner denied Plaintiff's application initially. (AR 64-78). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on March 3, 2016. (AR 37-63, 84-86). The ALJ issued an adverse decision on April 6, 2016, finding that Plaintiff was not disabled because there are jobs that exist in significant numbers in the national economy that she can perform. (AR 14-30). On August 30, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-6). This action followed on October 17, 2017.

## III.

### FACTUAL BACKGROUND

Plaintiff was born on May 16, 1961. (AR 175). She was fifty-four (54) years old when she appeared before the ALJ on March 3, 2016. (AR 37). Plaintiff lives with her husband and son and has a ninth-grade education. (AR 41). Plaintiff previously worked as a child-care provider and as an in-home support provider. (AR 57). She alleges disability due to high blood pressure, numbness in hands, and back pain. (AR 148).

## A.    <u>Plaintiff's Statements And Testimony</u>

In a pain questionnaire dated February 24, 2014, Plaintiff complained of fatigue, requiring daily naps of four to five hours. (AR 173).  She alleged severe, constant back pain, neck pain, headaches, fatigue, joint pain, knee pain, and leg pain, which are exacerbated by walking, sitting, standing, stretching, and lifting, and which interfere with her ability to sleep.  (AR 173).  She is able to stand or walk for fifteen minutes and sit for twenty minutes before experiencing pain.  (AR 173).  The pain has worsened as she has aged.  (AR 174).  Plaintiff also alleged depression, nervousness, and "heartache."  (AR 174).

On the same date, Plaintiff completed an Adult Function Report.  (AR 182-89).  She alleged an inability to work due to severe back pain, neck pain, headaches, dizziness, fatigue, stress, depression, nervousness, crying, irritability, poor energy, lack of motivation, poor memory, and generalized weakness.  (AR 182). Plaintiff described her daily functioning as "wake up, stay in bed, take medication, eat, walk around [the] room, go outside for fresh air, come back inside, lie down, and watch television."  (AR 182). Plaintiff has difficulty dressing, bathing, eating, and other personal care activities due to dizziness and numbness in her fingertips.  (AR 183-85).  She described herself as "hopeless, helpless" and "an ill woman."  (AR 182).  She denied taking care of any family members.  (AR 183).  Plaintiff seldom goes outside and only with her daughter due to her memory problems.  (AR 185). She does not drive because she is scared of traffic.  (AR 185).

She is not able to handle money, pay bills, or manage a checking account. (AR 185). Plaintiff denied any social activities. (AR 186). She alleged that her impairments affect her ability to lift, stand, walk, sit, climb, kneel, squat, reach, finger, and bend. (AR 187). Her impairments also affect her memory, concentration, ability to complete tasks, follow instructions, and get along with others. (AR 187). She is able to pay attention for only two minutes, does not finish what she starts, does not handle stress or changes in routine, cannot follow either written or spoken instructions, and does not get along with authority figures. (AR 187-88). Plaintiff asserted that she can walk only one-half block before needing a fifteen minute rest. (AR 187).

In August 2014, Plaintiff denied any changes in her condition. (AR 177). She alleged an inability to stand or sit for long periods and needs help with cooking, cleaning, and laundry, and cannot sustain activities due to pain throughout her body. (AR 179).

At her hearing, Plaintiff testified that she is unable to work due to back pain, depression, pain in her hands and her bones, dizziness, headaches, and nervousness. (AR 45-46). She feels "like there is a factory in [her] head, there is machinery in [her] head, it gets warm, [her] head and it affects [her] balance." (AR 46). She spends most of her day lying down. (AR 55). Plaintiff is unable to do anything around the house. (AR 48). Her daughter cooks for her or brings in prepared meals. (AR 48). Plaintiff's daughter or sister helps with household chores. (AR 48-49). Plaintiff is scared to drive. (AR 49). She is able to stand for

4

only fifteen to twenty minutes before getting dizzy. (AR 51). She hears voices in her head and then gets nauseous. (AR 51-52). She has trouble concentrating due to constant fear and pain. (AR 52). Plaintiff experiences migraine headaches three times a week. (AR 55).

**B.    Third-Party Statement**

On February 24, 2014, Plaintiff's daughter, Zara Ayvazyan, completed a Third Party Questionnaire. (AR 155-64). She indicated that she lives with Plaintiff and spends twelve hours a day with her. (AR 155). Plaintiff's allegations include back pain, neck pain, fatigue, nervousness, and memory loss, all of which limit her ability to work. (AR 156). Plaintiff's daily routine consists of waking up, staying in bed for a while, taking medications, eating breakfast, going outside for fresh air, and then coming back inside to rest. (AR 156). Plaintiff does not care for anyone else and has trouble sleeping. (AR 156-57). Ms. Ayvazyan described her mother as "hopeless and helpless." (AR 156).

Ms. Ayvazyan indicated that Plaintiff is afraid to bathe alone because she gets dizzy. (AR 157). She has difficulty getting dressed and using the toilet due to pain and numbness. (AR 157). Plaintiff must be reminded to take her medications and to complete her daily routines. (AR 158). Plaintiff is unable to prepare meals and other household chores due to pain, memory loss, and other "mental, emotional and physical problems." (AR 158-59). She does not shop, handle money, or pay bills. (AR 159-60).

Ms. Ayvazyan stated that while Plaintiff occasionally goes outside, she does not do so alone because of her memory issues. (AR 159). She does not drive due to fear of accidents and memory problems. (AR 159). Plaintiff spends her day watching television and does not socialize because she is "depressed, angry, irritable, and sad." (AR 160-61). Ms. Ayvazyan estimated that Plaintiff can walk only one-half block, can pay attention for only two minutes, does not complete what she starts, does not follow instructions well, does not handle stress well, and does not get along with others. (AR 162). Ms. Ayvazyan described Plaintiff as frequently crying, talking to herself, constantly being sad or depressed, being anxious, and having a fear of death. (AR 163).

## C.  **Treatment History**

On July 9, 2012, Plaintiff presented to the emergency room, complaining of low back pain, radiating down her left leg. (AR 320). She denied muscle pain, neurological symptoms, and psychiatric symptoms. (AR 320). On examination, there was tenderness in her left upper buttocks and a straight-leg-raising test was positive at 45 degrees on the left side. (AR 321). Otherwise, range of motion in her extremities was normal, with normal strength, and no tenderness, swelling, or deformity noted. (AR 321). A CT scan was negative. (AR 323).

Plaintiff returned to the emergency room on September 13, 2012, complaining of chest pain, back pain, nausea, diaphoresis, and dizziness. (AR 267). An examination was unremarkable. (AR

268, 276).  An ECG revealed some irregularity, so she underwent a cardiac evaluation.  (AR 267, 282, 284).  There was no evidence of ischemia, lab results were unremarkable, a chest CT was negative, and a chest x-ray was negative.  (AR 285, 301-02, 307-10).  Plaintiff was discharged with a recommendation to follow-up with her primary care physician.  (AR 269).

X-rays of the cervical and lumbar spine taken in June 2013 revealed degenerative spondylosis and disc disease at C4-C5.  (AR 209).  Otherwise, Plaintiff's lumbar and cervical spine were described as unremarkable.  (AR 209).

On September 19, 2013, Stephan Simonian, M.D., completed an initial psychiatric evaluation.  (AR 216-19).  Plaintiff reported depression, being unable to concentrate and function properly, irritability, crying spells, poor motivation, and feeling hopeless and helpless due to her adult son's schizophrenia.  (AR 216).  She takes Citalopram and Lorazepam on an "as needed basis."  (AR 217).  Plaintiff is unable to go to any crowded places and socialize with people because she gets nervous, vertigo, and dizzy.  (AR 217).  At times her head gets warm and she has nausea and vomits.  (AR 217).

On evaluation, Plaintiff was oriented, with normal speech, thought processes, association, intellectual functioning, and memory.  (AR 218).  Her affect was constricted and her mood was sad with frequent crying spells and sobbing.  (AR 218).  No delusional thinking, hallucinations, or suicidal or homicidal

7

ideations were observed. (AR 218). Plaintiff's ability to concentrate was poor. (AR 218). Dr. Simonian diagnosed major depression and generalized anxiety disorder and assigned a Global Assessment of Functioning ("GAF") score of 45.[1] (AR 218-19). He recommended treating Plaintiff with psychotherapy. (AR 219).

On February 20, 2014, Arsine Barsegyan, M.D., Plaintiff's primary care physician, completed a physical RFC questionnaire. (AR 220-23). She diagnosed migraine headaches, vertigo, fatigue, degenerative spondylosis, osteoarthritis of both knees, myalgia, generalized anxiety disorder, major depression, insomnia, and poor memory, with a "poor" prognosis. (AR 220). Dr. Barsegyan opined that Plaintiff can occasionally lift less than ten pounds, can stand or walk about two hours in an eight-hour workday, and can sit less than six hours in an eight-hour workday. (AR 221). Plaintiff needs to change positions every fifteen minutes during the workday and will likely miss more than three workdays per month. (AR 221). Plaintiff can occasionally bend, climb, reach,

[1] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). The GAF includes a scale ranging from 0-100, and indicates a "clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) (hereinafter DSM–IV). According to DSM–IV, a GAF score between 41 and 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning." Id. 34. "Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement." Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014).

handle, and finger but can never crouch, balance, kneel, or crawl. (AR 222).

On May 9, 2014, Paula Bailey-Walton, M.D., performed a complete internal medicine evaluation on behalf of the Agency. (AR 224-29). No medical records were reviewed. (AR 224). Plaintiff complained of dizziness, weakness, fatigue, migraines, nausea, neck pain, numb hands, left foot numbness, feet burning at night, joint pain with arthritis, and low back pain. (AR 224). She asserted total, constant body pain, with severe pain in her back, neck, and knees, radiating to her left leg and heel with associated numbness in her both hands. (AR 225). She described pain as 8/10, which is relieved by ibuprofen and aggravated by lying down and with physical activity. (AR 225). She claimed an ability to stand ten minutes, sit thirty minutes, walk one-half block, and lift five pounds. (AR 225). Plaintiff asserted that with regards to her activities of daily living, she is "independent." (AR 224).

On examination, Plaintiff gets in and out of her chair with moderate difficulty. (AR 225). She has ataxia secondary to an antalgic gait. (AR 225). No dyspnea was noted. (AR 225). Range of motion of the lumbar and cervical spine and upper and lower extremities were generally normal, with no tenderness, lordosis, or palpation. (AR 227-28). A straight-leg-raising test was negative. (AR 227). Plaintiff is able to perform tandem gait, stand on heels and toes, and does not require the use of an assistive device. (AR 227). Neurological tests were unremarkable, with strength at 5/5 in all extremities. (AR 228). Dr. Bailey-

Watson diagnosed fibromyalgia, history of major depression, lumbosacral strain, right knee strain, history of vertigo, and history of migraines. (AR 228). She opined that Plaintiff can lift and carry ten pounds occasionally and less than ten pounds frequently. (AR 228). Plaintiff can stand and walk for two hours and sit for six hours in an eight-hour workday. (AR 228). She is frequently limited in performing activities involving kneeling, bending, and stooping as well as overhead reaching, and pushing and pulling. (AR 228).

On the same day, Edward Ritvo, M.D., performed a complete psychiatric evaluation on behalf of the Agency. (AR 232-37). Plaintiff reported that she cries "all the time" and has difficulty concentrating on even simple tasks. (AR 232). She feels "threatened, anxious, and hopeless" due to her son's mental illness. (AR 232). Plaintiff denied hallucinations, delusions, morbid mood changes, suicidal ideations, or any evidence of psychosis. (AR 233). Plaintiff is able take care of her basic needs and is the primary caretaker for her son who is on disability. (AR 234). She is able to go out alone, pay bills, and handle cash appropriately. (AR 234).

On examination, Plaintiff's mood and affect were "obviously seriously depressed." (AR 235). Otherwise, her thought processes, thought content, speech, intellectual functioning, memory, fund of knowledge, concentration and calculation, insight, and judgment were all within normal limits. (AR 234-35). Dr. Ritvo diagnosed major depressive disorder, chronic, and assigned a GAF score of

50.  (AR 235-36).  He opined that Plaintiff has no impairment in the ability to understand, remember, or complete simple commands, and moderate impairments in the ability to understand, remember, or complete complex commands; interact appropriately with supervisors, coworkers, or the public; comply with job rules such as safety and attendance; respond to change in the normal workplace setting; and maintain persistence and pace in a normal workplace setting.  (AR 236).

On December 4, 2014, Plaintiff presented to the emergency room, complaining of a headache after a recent fall.  (AR 360).  A brain CT was unremarkable.  (AR 350-51).  Imaging of the cervical spine confirmed mild degenerative changes.  (AR 352).

In October 2015, Plaintiff complained of dizziness, severe headaches, neck pain radiating to her left hand, back pain radiating to her left leg, numbness in her left hand and left leg, anxiety, depression, difficulty climbing stairs, insomnia, poor concentration, and increased incontinence.  (AR 334).  On examination, Dr. Barsegyan noted abdominal tenderness and varicose tenderness.  (AR 334).  However, there was no indications of spine tenderness or reduced range of motion.  (AR 334).  In February 2016, Plaintiff complained of severe headaches, neck pain radiating down her left leg, dizziness, memory problems, hand numbness, back pain radiating down her left leg, left leg numbness, knee pain, difficulty climbing stairs, depression, anxiety, and poor concentration.  (AR 333).  On examination, Dr. Barsegyan noted reduced range of motion in her spine.  (AR 333).

On February 23, 2016, Dr. Simonian performed a psychiatric evaluation. (AR 335-37). He expressly noted that this was Plaintiff's first visit in nearly two years. (AR 335). Plaintiff reported that her son has been diagnosed with both bipolar disorder and schizophrenia and that it is very difficult for her emotionally to have him living with her. (AR 335). She is unable to concentrate and socialize with people. (AR 337). She has fears, sometimes feels heat in her body, and feels dizzy and loses balance. (AR 337). She denied delusions, hallucinations, and suicidal or homicidal ideations. (AR 337). On examination, Plaintiff was fully oriented, with normal thought processes, intellectual functioning and association. (AR 336-37). Her affect was constricted, her mood sad with frequent sobbing and crying spells, her psychomotor activity decreased, and her concentration impaired. (AR 336-37). Dr. Simonian diagnosed major depression, chronic, and a psychological state affecting her physical condition, assigned a GAF score of 45, and prescribed Prozac and Trazodone. (AR 337).

On the same day, Dr. Simonian completed a mental RFC assessment. (AR 338-45). He opined that Plaintiff is markedly limited in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform

at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; travel in unfamiliar places or use public transportation; set realistic goals or make plans independently of others; and tolerate stress in an ordinary work situation. (AR 338-39). Dr. Simonian also opined that Plaintiff is moderately impaired in her ability to remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; sustain an ordinary routine without special supervision; make simple work-related decisions; interact appropriately with the general public; ask simple questions or request assistance; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and be aware of normal hazards and take appropriate precautions. (AR 338-39). Dr. Simonian concluded that Plaintiff's impairments have a marked effect on her activities of daily living; a moderate effect in maintaining social functioning, a marked effect on concentration or persistence, and a marked likelihood of deterioration or decompensation in work-related situations. (AR 343-44).

An MRI performed in February 2016 revealed scoliotic curvature, minimal anterolisthesis, and disc protrusion with minimal to mild abutment of the nerve roots. (AR 347).

## D.    State Agency Consultants

On May 22, 2014, Jerry Thomas, M.D., a State agency consultant, reviewed the medical record and opined that Plaintiff has no severe physical impairment. (AR 71-72). Dr. Thomas considered only obesity as a physical impairment and found it nonsevere. (AR 71-72).

On May 14, 2014, Abesie Kelly, Ph.D., a State agency consultant, reviewed the medical record and opined that Plaintiff's affective disorder is a severe mental impairment. (AR 72). Dr. Kelly opined that Plaintiff has a mild restriction in activities of daily living, and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. (AR 72). Dr. Kelly concluded that Plaintiff is moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. (AR 74-75). Dr. Kelly opined that Plaintiff is able to perform unskilled work where interpersonal contact is incidental to work performed and the supervision required is simple, direct, and concrete. (AR 76).

# IV.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1)  Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2)  Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3)  Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404,

Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)  Is the claimant capable of performing his past work? If so, the claimant is found not disabled.  If not, proceed to step five.

(5)  Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  Id. at 954.  If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids").  Osenbrock v. Apfel,

240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE"). Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## V.

### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Act. (AR 30). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 17, 2013, the application date. (AR 16). At step two, the ALJ found that Plaintiff's degenerative disc disease of the cervical and lumbar spine and affective disorder are severe impairments.[2] (AR 16). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 19-21).

---

[2] The ALJ found that Plaintiff's medically determinable impairment of hypertension causes no more than a minimal effect on her ability to sustain basic activity and is therefore nonsevere. (AR 18-19). The ALJ also found a lack of objective evidence to substantiate Plaintiff's alleged symptoms of hand numbness, knee pain, headaches, and cervical cancer as medically determinable impairments. (AR 19).

The ALJ then assessed Plaintiff's RFC and concluded she can perform medium work, as defined in 20 C.F.R. § 416.967(c),[3] except:

> [Plaintiff] can sit, stand, or walk up to 6 hours in an 8 hour work day; she can push or pull to the same limits as she can lift or carry; she can use foot controls frequently with either foot; overhead reaching is limited to occasionally, bilaterally, and all other reaching is limited to frequently; handling or fingering is limited to frequently; [Plaintiff] can frequently use ramps, stairs, ladders, or scaffolds; she can frequently balance, stoop, kneel[,] crouch, or crawl; she is limited to simple, routine, and repetitive tasks; she is limited to simple, work-related decisions; she can respond appropriately to supervisors; and she can tolerate incidental contact with others, including co-workers and the general public.

(AR 21). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 28). Based on Plaintiff's RFC, age, education, work experience, and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including equipment cleaner, furniture cleaner, and

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

industrial sweeper. (AR 29). Accordingly, the ALJ found that Plaintiff has not been under a disability, as defined by the Act, since December 17, 2013, the application date. (AR 30).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-

19

21 (citing <u>Flaten v. Sec'y of Health & Human Servs.</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## VII.

## DISCUSSION

Plaintiff raises four claims for relief: (1) the ALJ failed to properly consider Plaintiff's subjective complaints; (2) the ALJ failed to properly consider lay witness statements; (3) the ALJ improperly disregarded treating and examining evidence of Plaintiff's mental limitations; and (4) the ALJ improperly determined that Plaintiff retained an RFC for medium work. (Dkt. No. 19). The Court addresses each claim in turn.

**A.** **The ALJ's Reasons for Discrediting Plaintiff's Subjective Symptom Testimony Were Specific, Clear and Convincing**

In a February 2014 Adult Function Report, Plaintiff alleged an inability to work due to severe back pain, neck pain, headaches, dizziness, fatigue, stress, depression, nervousness, crying, irritability, poor energy, lack of motivation, poor memory, and generalized weakness. (AR 182). Her impairments affect her memory, concentration, ability to complete tasks, follow instructions, and get along with others. (AR 187). She is able to pay attention for only two minutes, does not finish what she starts, does not handle stress or changes in routine, cannot follow either written or spoken instructions, and does not get along with authority figures. (AR 187-88). Plaintiff asserted that she can

walk only one-half block before needing a fifteen-minute rest.  (AR
187).  At her March 2016 hearing, Plaintiff testified that she is
unable to work due to back pain, depression, pain in her hands and
her bones, dizziness, headaches, and nervousness.  (AR 45-46).  She
spends most of her day lying down, and is unable to do anything
around the house.  (AR 48, 55).  She is able to stand for only
fifteen to twenty minutes before getting dizzy.  (AR 51).

When assessing a claimant's credibility regarding subjective
pain or intensity of symptoms, the ALJ must engage in a two-step
analysis.  Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017).
First, the ALJ must determine if there is medical evidence of an
impairment that could reasonably produce the symptoms alleged.
Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).  "In this
analysis, the claimant is not required to show that her impairment
could reasonably be expected to cause the severity of the symptom
she has alleged; she need only show that it could reasonably have
caused some degree of the symptom."  Id. (emphasis in original)
(citation omitted).  "Nor must a claimant produce objective medical
evidence of the pain or fatigue itself, or the severity thereof."
Id. (citation omitted).

If the claimant satisfies this first step, and there is no
evidence of malingering, the ALJ must provide specific, clear and
convincing reasons for rejecting the claimant's testimony about
the symptom severity.  Trevizo, 871 F.3d at 678 (citation omitted);
see also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the
claimant's testimony regarding the severity of her symptoms only

if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). In addition, the ALJ may consider the observations of

treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ found that Plaintiff's degenerative disc disease and affective disorder cause some limitations in her ability to perform work activity but does not preclude all basic work activity, as Plaintiff alleged. (AR 24-25). The ALJ provided specific, clear, and convincing reasons, supported by evidence in the record, to

find Plaintiff's complaints of disabling physical and mental symptomology only partially credible. (AR 26). These reasons are sufficient to support the Commissioner's decision.

First, the ALJ found that Plaintiff's allegations of disabling symptoms are inconsistent with the objective medical record, which indicates that

> she has had nearly normal, or normal, range of motion. There has been only mild tenderness to palpation, and her gait and station have been normal. There is no assessment she requires an assistive device for ambulation, and there is no neurological assessment to confirm her complaints of dizziness and numbness (which might further restrict her ability to stand, walk, or lift/carry).

(AR 24). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008). While inconsistencies with the objective medical evidence cannot be the sole ground for rejecting a claimant's subjective testimony, it is a factor that the ALJ may consider when evaluating credibility. Bray, 554 F.3d at 1227; Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); Rollins, 261 F.3d at 857; see SSR 16-3p, at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and

persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities").

As the ALJ noted, physical examinations have been largely unremarkable. (AR 16-18, 24). In July 2012, Plaintiff's range of motion in her extremities was normal, with normal strength and no tenderness, swelling, or deformity noted. (AR 321). In September 2012, a physical examination, lab results, a chest CT, and a chest x-ray were all unremarkable. (AR 268, 276, 285, 301-02, 307-10). June 2013 x-rays of Plaintiff's cervical and lumbar spine confirmed degenerative spondylosis and disc disease at C4-C5, but were otherwise unremarkable. (AR 209). In a May 2014 consultative examination, range of motion was generally normal, a straight-leg-raising test was negative, neurological tests were unremarkable, and Plaintiff was able to perform tandem gait, stand on heels and toes, and did not require the use of an assistive device. (AR 227-28). In December 2014, a brain CT was unremarkable and imaging of Plaintiff's cervical spine confirmed only mild degenerative changes. (AR 350-52). In October 2015, Plaintiff's primary care physician noted abdominal and varicose tenderness, but no indication of spine tenderness or reduced range of motion. (AR 334).

Plaintiff contends that MRI results are consistent with her subjective symptoms. (Dkt. No. 19 at 5-6). The ALJ acknowledged that clinical tests and examinations, including the MRI, confirm that Plaintiff's degenerative disc disease of the lumbar and cervical spine is a severe impairment. (AR 16-18). However, the

generally unremarkable physical examinations undermine Plaintiff's allegations of extreme functional limitations. Thus, as the ALJ concluded, while "there is a severe degenerative impairment affecting [Plaintiff's] spine, which reasonably would result in some degree of pain, [Plaintiff], however, has made an insufficient offer of proof, either objective or clinical, to correlate with her allegations of extreme limitations in physical functioning." (AR 24). The ALJ correctly noted that the medical evidence does not support Plaintiff's allegation that she is largely unable to function and can stand or walk for only fifteen to twenty minutes. Similarly, while Plaintiff alleged significant memory problems, there were no significant memory impairments on examination. (Compare AR 158, 159, 182, 185, 187 with id. 218, 235; see id. 25). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3p, at *8.

Second, the ALJ found that Plaintiff's allegations of disabling systems are inconsistent with her reported and demonstrated functional abilities. (AR 24-25). "The ALJ may consider many factors in weighing a claimant's credibility, including . . . prior inconsistent statements concerning the symptoms[ ] and other testimony by the claimant that appears less than candid . . . ." Tommasetti, 533 F.3d at 1039. In their

February 2014 function reports, both Plaintiff and her daughter asserted that Plaintiff requires assistance with her daily functioning: she cannot bathe on her own because she gets dizzy, she does not go outside alone, she needs reminders to take medication, she does no meal preparation or household chores, and she has difficulty using the toilet due to pain in her back and knees.  (AR 157-59, 182-85).  However, only three months later, Plaintiff reported to both the consulting physician and the consulting psychiatrist that she is "independent" in her daily activities.  (AR 224, 234).  Both Plaintiff and her daughter asserted to the State Agency that Plaintiff is unable to handle money, pay bills, or manage a bank account.  (AR 159-60, 185).  To the consulting psychiatrist, however, Plaintiff reported she could handle money and pay bills.  (AR 234).  Plaintiff reported to the consulting psychiatrist that she has a valid driver's license and is able to leave the house by herself.  (AR 234).  Previously, however, both Plaintiff and her daughter stated that she had not driven in years and was unable to leave the house by herself.  (AR 159, 185).  Plaintiff and her daughter asserted that Plaintiff does not get along with others and is a "hopeless, helpless," and an "ill woman."  (AR 156, 160-61, 182, 186-88).  To the consulting psychiatrist, however, Plaintiff reported that she has a "fair" relationship with family and friends.  (AR 234).  These multiple, material inconsistencies undermine the credibility of Plaintiff's subjective statements.

Finally, the ALJ noted that Plaintiff's alleged disabling limitations are belied by her reported activities of daily living.

27

(AR 25). "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016; see Burrell, 775 F.3d at 1137 ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination."). Nevertheless, an ALJ properly may consider the claimant's daily activities in weighing credibility. Tommasetti, 533 F.3d at 1039. If a claimant's level of activity is inconsistent with the claimant's asserted limitations, it has a bearing on credibility. Garrison, 759 F.3d at 1016. Both Plaintiff and her daughter expressly denied that Plaintiff takes care of anyone else. (AR 156, 183). To the consulting psychiatrist, however, Plaintiff reported that she was the primary caregiver for her son, who was a diagnosed schizophrenic. (AR 234). Everyday activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012). The ALJ properly concluded that "[n]ot only is this a significant contradiction[ ] regarding [Plaintiff]'s daily functioning (as well as her self-contradiction as 'helpless'),", this work at home, when considered with all of the other record evidence, also suggests that Plaintiff's limitations are not as great as she alleges. (AR 25).

Plaintiff contends that the Ninth Circuit's decision in <u>Moisa v. Barnhart</u>, 367 F.3d 882 (9th Cir. 2004), commands a different result. (Dkt. No. 19 at 6). In <u>Moisa</u>, the court found that "the ALJ rejected Moisa's pain testimony <u>solely</u> for lack of objective medical evidence corroborating it." <u>Id.</u> at 885 (emphasis added). The ALJ did not reject Moisa's testimony "on permissible grounds, such as a reputation for dishonesty, conflicts between the claimant's testimony and his conduct, or internal contradictions in the testimony." <u>Id.</u> Here, to the contrary, the ALJ did not reject Plaintiff's testimony <u>solely</u> because of the lack of objective medical evidence. Instead, as discussed above, the ALJ identified multiple, material inconsistencies between the statements Plaintiff made to the Agency and those she made to the consulting doctors, and also considered Plaintiff's daily activities. (AR 25).

In sum, the ALJ offered clear and convincing reasons, supported by substantial evidence in the record, for his adverse credibility findings. Accordingly, because substantial evidence supports the ALJ's assessment of Plaintiff's credibility, no remand is required.

**B.** **The ALJ Provided Germane Reasons For Rejecting Lay Testimony**

In a third-party statement, Plaintiff's daughter described her mother as "hopeless and helpless." (AR 156). She indicated that Plaintiff is afraid to bathe alone because she gets dizzy. (AR 157). She has difficulty getting dressed and using the toilet

due to pain and numbness. (AR 157). Plaintiff must be reminded to take her medications and to complete her daily routines. (AR 158). Plaintiff is unable to prepare meals and other household chores due to pain, memory loss, and other "mental, emotional and physical problems." (AR 158-59). She does not shop, handle money, or pay bills. (AR 159-60). Plaintiff can walk only one-half block, can pay attention for only two minutes, does not complete what she starts, does not follow instructions well, does not handle stress well, and does not get along with others. (AR 162).

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). "One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." Id.

Plaintiff asserts that the ALJ improperly "disregarded witness testimony from [Plaintiff's] daughter because she is not a doctor." (Dkt. No. 19 at 12). To the contrary, the ALJ rejected Ms. Ayvazyan's statements for the same reasons that he discounted Plaintiff's subjective statements: they are contradicted by the objective medical record, they are inconsistent with Plaintiff's reported and demonstrated functional abilities, and they are belied by Plaintiff's admitted daily activities. (AR 24-25).

The ALJ provided germane reasons for rejecting Ms. Ayvazyan's statement. Ms. Ayvazyan's third party statement largely mirrored

the statement submitted by her mother. (Compare AR 155-64, with id. 182-89). As discussed above, the ALJ gave clear and convincing reasons for rejecting Plaintiff's subjective complaints. Thus, because Plaintiff's daughter's "lay testimony was similar to [Plaintiff's] complaints, it follows that the ALJ also gave germane reasons for rejecting the lay witness testimony." Leon v. Berryhill, 880 F.3d 1041, 1046 (9th Cir. 2017); see Molina, 674 F.3d at 1122 (because "the lay testimony described the same limitations as Molina's own testimony, . . . the ALJ's reasons for rejecting Molina's testimony apply with equal force to the lay testimony"); Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

In sum, the ALJ provided germane reasons for rejecting Ms. Ayvazyan's lay testimony, and no remand is required.

**C.    The ALJ Properly Weighed The Medical Sources' Opinions**

Plaintiff asserts that the ALJ erred in discounting treatment opinions from Drs. Barsegyan and Simonian. (Dkt. No. 19 at 12-14). Plaintiff also vaguely argues that the ALJ "unjustly" disregarded the "favorable" opinion by the consulting physician. (Id. at 9).

An ALJ must take into account all medical opinions of record. 20 C.F.R. §§ 404.1527(b), 416.927(b). The regulations "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing [(nonexamining)] physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); accord Garrison, 759 F.3d at 1012. "The weight afforded a non-examining physician's testimony depends 'on the degree to which they provide supporting explanations for their opinions.' " Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1201 (9th Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(3)).

The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017); see also 20 C.F.R.

§§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). Greater weight is also given to the "opinion of a specialist about medical issues related to his or her area of specialty." 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Id.; see also Reddick, 157 F.3d at 725 (the "reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Trevizo, 871 F.3d at 675 (citation omitted). "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.' " Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). Additionally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831 (emphasis in original). Finally, when weighing conflicting medical opinions, an ALJ may reject an opinion that is

33

conclusory, brief, and unsupported by clinical findings. <u>Bayliss</u>, 427 F.3d at 1216; <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).

### 1. Dr. Barsegyan

On February 20, 2014, Dr. Barsegyan, Plaintiff's primary care physician, completed a physical RFC questionnaire. (AR 220-23). He opined that Plaintiff can occasionally lift less than ten pounds, can stand or walk about two hours in an eight-hour workday, and can sit less than six hours in an eight-hour workday. (AR 221). Plaintiff needs to change positions every fifteen minutes during the workday and will likely miss more than three workdays per month. (AR 221).

The ALJ gave Dr. Barsegyan's opinion "minimal consideration" because it is largely based on Plaintiff's self-reporting and is not supported by objective evidence. (AR 25-26). The ALJ also minimized the weight of the opinion because it was based on only two visits. (AR 25-26). Because Dr. Barsegyan's opinion was uncontradicted, the Court reviews the ALJ's rejection of Dr. Barsegyan's opinion for "clear and convincing reasons that are supported by substantial evidence." <u>Bayliss</u>, 427 F.3d at 1216. The Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Dr. Barsegyan's opinion.

Dr. Barsegyan's opinion was not supported by objective or clinical evidence. Medical opinions that are inadequately explained or lack supporting clinical or laboratory findings are entitled to less weight. Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected "check-off reports that did not contain any explanation of the bases of their conclusions"); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ properly rejected physician's opinion where it was "conclusory and unsubstantiated by relevant medical documentation"); see also 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). Dr. Barsegyan's explanation was limited to listing the diagnoses of migraine headaches, vertigo, fatigue, degenerative spondylosis, osteoarthritis of both knees, myalgia, generalized anxiety disorder, major depression, insomnia, and poor memory, and referencing x-rays of the cervical and lumbar spine. (AR 220, 222). The medical evidence does confirm that Plaintiff's degenerative disc disease is a severe impairment. (AR 16-18). However, the mere existence of degenerative disc disease does not provide any support for the disabling limitations opined by Dr. Barsegyan.[4] Indeed, "[t]he mere existence of an impairment is insufficient proof of a disability." Matthews v. Shalala, 10 F.3d

---

[4] Plaintiff does not dispute the ALJ's finding that her only severe impairments are degenerative disc disease and affective disorder. (AR 16-19).

678, 680 (9th Cir. 1993); see Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985) ("The mere diagnosis of an impairment . . . is not sufficient to sustain a finding of disability."). Even if a claimant receives a particular diagnosis, it does not necessarily follow that the claimant is disabled, because it is the claimant's symptoms and true limitations that generally determine whether she is disabled. See Rollins, 261 F.3d at 856. Dr. Barsegyan cites no clinical tests in support of her extreme limitations. Further, as the ALJ noted, Dr. Barsegyan's limitations "are not consistent with other clinical and objective evidence in the record." (AR 26). As discussed above, physical examinations were largely unremarkable.

Plaintiff contends that Dr. Barsegyan's opinion is supported by her examinations finding abdominal and varicose tenderness and reduced range of motion. (Dkt. No. 19 at 14). However, these examinations occurred in October 2015 and February 2016 (AR 333-34), over nineteen months after Dr. Barsegyan issued her opinion and thus provide little support for the doctor's February 2014 opinion.

The ALJ properly concluded that Dr. Barsegyan "relied on self-reports by [Plaintiff], rather than objective evidence." (AR 26). "An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." Tommasetti, 533 F.3d at 1041 (citation omitted). As discussed above, the ALJ's rejection of Plaintiff's subjective complaints was supported by substantial

evidence. Here, given that Plaintiff's allegations of disabling symptoms are otherwise unsupported in the record, it appears that Dr. Barsegyan's opinion was based to a large extend on Plaintiff's self-reports and was, therefore, properly rejected by the ALJ. Finally, the ALJ properly gave little weight to Dr. Barsegyan's opinion because of the limited treatment relationship. "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record." Revels, 874 F.3d at 654.

The Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence in the record, for giving Dr. Barsegyan's opinion minimal weight, and no remand is required.

**2. Dr. Simonian**

On February 23, 2016, Dr. Simonian completed a mental RFC assessment. (AR 338-45). He opined that Plaintiff is markedly limited in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform

at a consistent pace without an unreasonable number and length of
rest periods; accept instructions and respond appropriately to
criticism from supervisors; get along with coworkers or peers
without distracting them or exhibiting behavioral extremes; respond
appropriately to changes in the work setting; travel in unfamiliar
places or use public transportation; set realistic goals or make
plans independently of others; and tolerate stress in an ordinary
work situation. (AR 338-39). Dr. Simonian concluded that
Plaintiff's impairments have a marked effect on her activities of
daily living; a moderate effect in maintaining social functioning,
a marked effect on concentration or persistence, and a marked
likelihood of deterioration or decompensation in work-related
situations. (AR 343-44).

The ALJ gave Dr. Simonian's opinion "minimal weight" because
it was not based on a longitudinal record, included "little
objective or clinical assessment," and was instead "merely a
recitation of [Plaintiff's] self-reports."[5] (AR 28). Because Dr.
Simonian's opinion was contradicted by Dr. Ritvo's opinion, to
which the ALJ gave "great weight" (AR 26-27), the Court reviews
the ALJ's rejection of Dr. Simonian's opinion for "specific and
legitimate reasons that are supported by substantial evidence,"
Bayliss, 427 F.3d at 1216. The Court finds that the ALJ provided

---

[5] In his opinion, Dr. Simonian expressly noted that he had not
seen Plaintiff in nearly two years. (AR 335). Therefore, because
the record contained no proof of a longitudinal treating
relationship, the ALJ determined that Dr. Simonian's assessment
was a consulting opinion (AR 28), a conclusion which Plaintiff does
not dispute.

specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Simonian's opinion.

The ALJ found no support for the multiple marked limitations assessed by Dr. Simonian. (AR 28). In Dr. Simonian's initial psychiatric examination, in September 2013, Plaintiff's affect was constricted, her mood was sad, and she had poor concentration, but she was fully oriented, with normal speech, thought processes, association, intellectual functioning, and memory. (AR 218). No delusional thinking, hallucinations, or suicidal or homicidal ideations were observed. (AR 218). In February 2016, Plaintiff's affect was constricted, her mood sad, psychomotor activity decreased, and concentration impaired, but she was fully oriented, with normal thought processes, intellectual functioning and association. (AR 336-37). These generally mild findings provide no support for Dr. Simonian's marked limitations.

The ALJ properly concluded that Dr. Simonian's opinion was largely based on Plaintiff's self-reports rather than any objective or clinical assessment. (AR 28). "An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." Tommasetti, 533 F.3d at 1041 (citation omitted). As discussed above, the ALJ's rejection of Plaintiff's subjective complaints was supported by substantial evidence. Here, other than a constricted affect, sad mood, and impaired concentration, Dr. Simonian's limited mental status examinations were unremarkable. (AR 218, 336-37). Thus, given Dr. Simonian's opinion that

Plaintiff has multiple marked functional limitations is otherwise unsupported in the record, it appears that Dr. Simonian's opinion was based to a large extend on Plaintiff's self-reports and was, therefore, properly rejected by the ALJ. Finally, the ALJ properly gave little weight to Dr. Simonian's opinion because it was not based on a longitudinal relationship. See Revels, 874 F.3d at 654.

The Court finds that the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for giving Dr. Barsegyan's opinion minimal weight, and no remand is required.

### 3. Dr. Bailey-Walton

Dr. Bailey-Walton, a consultative examiner, opined that Plaintiff can lift and carry ten pounds occasionally and less than ten pounds frequently. (AR 228). Plaintiff can stand and walk for two hours and sit for six hours in an eight-hour workday. (AR 228). The ALJ concluded that Dr. Bailey-Walton's clinical tests were inconsistent with her assessment of a sedentary functional capacity. (AR 26). The ALJ also noted that Dr. Bailey-Walton's specialty is internal medicine, not orthopedic medicine. (AR 26). For these reasons, the ALJ found that Dr. Bailey-Walton's assessment "cannot be given controlling, or even great weight." (AR 26). Because Dr. Bailey-Walton's opinion was uncontradicted, the Court reviews the ALJ's rejection of Dr. Bailey-Walton's opinion for "clear and convincing reasons that are supported by substantial evidence." The Court finds that the ALJ provided clear

and convincing reasons, supported by substantial evidence, for rejecting Dr. Bailey-Walton's opinion.

Dr. Bailey-Walton's opinion was inconsistent with her own examinations and clinical tests. Medical opinions that are inadequately explained or lack supporting clinical or laboratory findings are entitled to less weight. Crane, 76 F.3d at 253. The ALJ properly found Dr. Bailey-Walton's examination findings that Plaintiff is able to walk on heels and toes, has no need for an assistive device to ambulate, has left grip strength up to twenty pounds, normal neurology, normal functioning in upper extremities, negative straight-leg-raising test, and full range of motion in the cervical spine, are not consistent with her assessment of sedentary functional capacity. (AR 26, 227-28). As the ALJ also noted, Dr. Bailey-Walton's opinion did not include a discussion, explaining how the relatively normal examination findings equate with a functional assessment for sedentary work. (AR 26). The regulations give more weight to opinions that are explained than those that are not. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Finally, the ALJ properly gave Dr. Bailey-Walton's opinion less weight because she is an internist, not an orthopedic specialist. (AR 26). More weight is given to the opinions of specialists relating to their specialty over those of nonspecialists. Holohan, 246 F.3d at 1202; 20 C.F.R. §§ 404.1527(c)(5), 416,927(d)(5).

The Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence in the record, for

giving Dr. Bailey-Walton's opinion minimal weight, and no remand is required.

## D.   The ALJ Properly Determined Plaintiff's RFC

The ALJ found that Plaintiff's degenerative disc disease and affective disorder are severe impairments. (AR 16). After considering the record, he determined that Plaintiff retains the RFC to perform a limited range of medium work and is limited to simple, routine, and repetitive tasks, and only incidental contact with coworkers and the general public. (AR 21).

"A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations." Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989) (citing 20 C.F.R. § 404.1545). An RFC assessment requires the ALJ to consider a claimant's impairments and any related symptoms that may "cause physical and mental limitations that affect what [he] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining a claimant's RFC, the ALJ considers all relevant evidence, including residual functional capacity assessments made by consultative examiners, State agency physicians and medical experts. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); see also id. §§ 404.1513(c), 416.913(c). Further, "it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); see 20 C.F.R. §§ 404.1546(c) ("[T]he administrative law

judge . . . is responsible for assessing your residual functional capacity."), 416.946(c) (same).

The ALJ's RFC determination is supported by substantial evidence. Plaintiff testified that she stopped working in 2010 largely because of her mental impairments. (AR 45). As discussed above, Plaintiff presented no evidence that her degenerative disc disease causes any material functional limitations that would preclude her from the physical demands of her previous employment. Despite the lack of imaging to confirm degenerative changes to Plaintiff's lumbar spine, the ALJ gave Plaintiff a "significant benefit of the doubt" in finding her lumbar spine impairment to be severe. (AR 20). Plaintiff had a positive straight leg raising test on only one examination. (AR 16, 20, 321). Otherwise, neurological examinations have been negative. (AR 16-20, 227-28). Imaging reports have confirmed mild to moderate changes in Plaintiff's cervical spine. (AR 16-20, 209, 352). However, Plaintiff provided no evidence of sensory or reflex loss and no proof that her alleged headaches or migraines are related to her cervical spine impairment. (AR 16-20). Physical examinations have been largely unremarkable, with normal range of motion and strength. (AR 227-28, 323).

Plaintiff does not identify any medical evidence that the ALJ failed to consider. Instead, she contends that the ALJ's RFC fails to take into account her subjective complaints and the opinions of Drs. Barsegyan and Bailey-Walton. (Dkt. No. 19 at 7-10). However, as discussed above, the ALJ properly rejected Plaintiff's

allegations and Drs. Barsegyan's and Bailey-Walton's opinions of disabling functional limitations. Thus, because Plaintiff has not proffered competent evidence that her physical capabilities have materially changed since she last worked, the ALJ reasonably concluded that Plaintiff retains the physical RFC to perform a limited range of medium work consistent with her last job. (AR 16-18, 21-28, 57-59). Based on Plaintiff's statements and her testimony, the VE determined that Plaintiff's most recent employment as a home care provider is a medium job. (AR 57). Furthermore, the ALJ gave Plaintiff the "benefit of the doubt" regarding her degenerative disc disease and further limited her range of medium work to only occasional overhead reaching, only frequent use of foot controls, ramps, stairs, ladders, or scaffolds, and only frequent balancing, stooping, kneeling, crouching, or crawling. (AR 20, 21, 24, 58-59).

Even if the ALJ should have restricted Plaintiff to light work, the error would be harmless. Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017) ("The Court may not reverse an ALJ's decision on account of a harmless error."). The VE testified that Plaintiff performed her most recent job as an in-home support provider as light to medium. (AR 57). The ALJ also noted that Plaintiff's previous job as childcare provider was a light job generally and as performed by Plaintiff. (AR 57). Nevertheless, if Plaintiff's RFC was reduced to occasionally lifting and carrying twenty pounds and frequently lifting and carrying ten pounds, the VE testified that there are still jobs that exist in significant

numbers in the national economy that she can perform, including labeler, mail clerk, and garment sorter. (AR 59).

The ALJ also included nonexertional limitations in Plaintiff's RFC. Based on his examination of Plaintiff, the consulting psychiatrist opined that Plaintiff has no impairment in the ability to understand, remember, or complete simple commands, and moderate impairments in the ability to understand, remember, or complete complex commands; interact appropriately with supervisors, coworkers, or the public; comply with job rules such as safety and attendance; respond to change in the normal workplace setting; and maintain persistence and pace in a normal workplace setting. (AR 236). The ALJ found that the consulting psychiatrist's assessment was consistent with his clinical findings and gave the assessment "great weight," a conclusion that Plaintiff does not dispute. (AR 27). Consistent with his responsibilities, the ALJ translated the consulting psychiatrist's assessment into an RFC for simple, routine, and repetitive tasks, limiting Plaintiff to simple, work-related decisions, with incidental contact with coworkers and the general public. (AR 21, 27).

The RFC assessment requires the ALJ to consider the medical evidence and determine the functional limitations that affect what the claimant can do in a work setting. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Further, it is the ALJ's sole responsibility to determine the RFC. Vertigan, 260 F.3d at 1049; see also Tommasetti, 533 F.3d at 1041-42 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for

45

resolving ambiguities.") (citation omitted). Considering the record as a whole, the ALJ reasonably found that Plaintiff can perform a range of medium work, limited to simple tasks. (AR 21). See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174-76 (9th Cir. 2008) (ALJ is responsible for translating claimant's impairments into work-related functions and determining RFC).

Plaintiff argues that the ALJ "failed to consider [Plaintiff's] ability to maintain a work schedule and did not consider frequent unscheduled breaks during the work or absences caused by depression and inability to cope due to her physical and psychiatric problems." (Dkt. No. 19 at 11). Plaintiff is apparently referring to Dr. Simonian's assessment, which concluded that Plaintiff is markedly limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 338-39). However, as discussed above, the ALJ properly rejected Dr. Simonian's opinion. Thus, because the ALJ's RFC assessment is supported by substantial evidence, no remand is required.

**VIII.**

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of

the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: July 12, 2018

                                        /S/
                                SUZANNE H. SEGAL
                                UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS OR ANY OTHER LEGAL DATABASE.**